# Exhibit 1

*Declaration of Denise Alexander*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01148-PAB

WU ZILONG,

    Petitioner,

v.

JOHN FABBRICATORE, Field Office Director, U.S. Immigration & Customs Enforcement,
TAE JOHNSON, Acting Director for U.S. Immigration & Customs Enforcement,
ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security,
MERRICK B. GARLAND, United States Attorney General, and
JOHNNY CHOATE, Warden of the Aurora Contract Detention Facility,

    Respondents.

---

## DECLARATION OF DENISE ALEXANDER

I, Denise Alexander, pursuant to 28 U.S.C. § 1746, and based on my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above-captioned matter:

1. I am employed as a Deportation Officer for the United States Department of Homeland Security ("Department"), Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations Denver Field Office ("Denver ERO"). My duty station is at the ICE contract detention facility in Aurora, Colorado ("GEO CDF"). I am the Deportation Officer assigned to the case of Zilong Wu, A208825247.

2. I have reviewed the case of Mr. Wu (the "Petitioner"), who is in ICE custody detained at the GEO CDF in Aurora, Colorado.

1

3. The Petitioner is a native and citizen of the People's Republic of China. On September 17, 2015, he was admitted to the United States as a nonimmigrant with authorization to remain in the United States for a temporary period of up to six months. He remained in the United States beyond the authorized period.

4. On December 14, 2018, the Petitioner was convicted in the State of California of one count of Battery on Spouse pursuant to section 243(e)(1) of the Penal Code. He was sentenced to 30 days in jail followed by 36 months of probation. However, the Petitioner did not successfully complete probation, which the court terminated upon his subsequent conviction in 2020.

5. On February 6, 2020, the Petitioner was convicted in the Superior Court of California, in and for the County of Los Angeles, of one count of Child Abuse Under Circumstances Likely to Cause Great Bodily Injury or Death in violation of section 273a(a) of the Penal Code. He was sentenced to two years in prison plus one year under a sentence enhancement provision. The court also issued a protection order in favor of the Petitioner's wife and protected child.

6. On August 20, 2020, the Petitioner was released from the custody of the California Department of Corrections and Rehabilitation at which time ICE officers arrested and detained him. ICE determined that, pursuant to 8 USC § 1226(c)(1)(B), the Petitioner's criminal conviction rendered him subject to mandatory detention pending the outcome of immigration proceedings. He was then transferred to the GEO CDF.

7. On that same date, the Department issued a Notice to Appear ("NTA") against the Petitioner based on his conviction in 2020 as well as his unlawful immigration status. Specifically, the Petitioner was charged with removal pursuant to: 8 USC

§1227(a)(2)(A)(i) as an alien who has been convicted of a crime involving moral turpitude committed within five years after admission; 8 USC §1227(a)(2)(E)(i) as an alien who, at any time after admission, has been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment; and 8 USC §1227(a)(1)(B) as an alien who, after admission as a nonimmigrant, remained in the United States for a time longer than permitted.

8. On August 24, 2020, the Department filed the NTA with the U.S Department of Justice, Executive Office of Immigration Review, in Aurora, Colorado.

9. On September 3, 2020, the Petitioner was scheduled to appear before the Immigration Judge ("IJ") for his initial appearance and bond hearing. The IJ rescheduled the hearing as the Petitioner was subject to quarantine and did not appear in court.

10. On September 17, 2020, the Petitioner was scheduled to appear before the IJ, but was still subject to quarantine and did not appear in court.

11. On September 21, 2020, the Petitioner appeared pro se before the IJ for a master calendar hearing. The Petitioner admitted the allegations and conceded the removal charges in the NTA. The IJ sustained the removal charges and determined that the respondent was not eligible for any form of relief from removal. The Petitioner requested removal and the IJ ordered him removed to China. The Petitioner waived appeal of the IJ's decision and withdrew his motion for bond redetermination.[1]

---

[1] On September 28, 2020, upon the Department's motion, the IJ issued an amended written removal order clarifying the outcome of the proceedings to conform with the prior oral decision ordering the Petitioner removed to China.

12. ICE determined that the Petitioner has a valid unexpired passport issued in his name by the People's Republic of China.[2] The passport is in the custody of ICE ERO at the GEO CDF. Plaintiff does not require additional travel documents beyond this valid, unexpired passport.

13. The Department has attempted to execute the Petitioner's removal from the United States. However, due to the global Covid-19 pandemic and the attendant travel restrictions in countries worldwide, the Department has not yet been able to effectuate the Petitioner's removal.

14. Specifically, the Department attempted to schedule the Petitioner's removal on/in:

i. October 2020: The Petitioner was scheduled to depart Denver to San Francisco then on to Peking on November 9, 2020. However, the airline[3] changed the itinerary to December 1, 2020.

ii. November 13, 2020: The airline cancelled the upcoming itinerary and advised that daily departures to Peking would start on January 5, 2021.

iii. January 7, 2021: The airline cancelled flights to Peking and advised that flights would be available starting on March 4, 2021.

iv. February 26, 2021: The airline cancelled the Petitioner's March 11, 2021 itinerary and advised that flights would be available starting on April 1, 2021.

v. March 8, 2021: The airline advised that direct flights from San Francisco to Peking were no longer available for the month of April.

vi. April 19, 2021: The airline advised that flights from San Francisco to Peking are not available for the month of June.

vii. May 25, 2021: The airline advised that the first available date for travel is now scheduled in August 2021.

---

[2] The Petitioner's passport will expire on May 5, 2025.
[3] In each instance, the airline referred to is United Airlines.

15. On December 9, 2020, ICE conducted a Post Order Custody Review (POCR) of the Petitioner's case pursuant to 8 C.F.R. § 241.4, determined there is a significant likelihood of removal in the reasonably foreseeable future, and continued to detain the Petitioner.

16. On March 25, 2021, ICE conducted a POCR of the Petitioner's case pursuant to 8 C.F.R. § 241.4. ICE determined that there is a significant likelihood of removal in the reasonably foreseeable future; determined that all the criteria for release had not been satisfied pursuant to 8 C.F.R. § 241.4(e); and, again, continued to detain the Petitioner.

17. On April 26, 2021, the Petitioner filed his petition for writ of habeas corpus before the U.S. District Court for the District of Colorado.

18. Since the beginning of the global pandemic, and as noted above, flights from the United States to China have been extremely limited, and there are currently no U.S. carriers flying into China from the United States. However, the Department anticipates that this circumstance will soon change, due to the expanded availability of Covid-19 vaccines and the resulting opening up of borders around the world, including in China.

19. Specific to this case, earlier this month, the Travel Coordinator at the GEO CDF received notice that China will begin accepting weekly flights from San Francisco to Shanghai that can be used for removals beginning on August 15, 2021.[4]

20. The Department has submitted a request to remove the Petitioner on a flight departing on August 16, 2021, which will arrive in Shanghai, China on Tuesday, August 17, 2021. The request is currently pending at the Department's Enforcement and

---

[4] I have also personally researched flights from the United States to China, and note that, while there are no U.S. carriers currently scheduling direct flights to China in June or July of 2021, *multiple* carriers are scheduling regular flights to China beginning in August of 2021.

5

Removal Operations Headquarters, and I anticipate that it will be approved early next week. This is because, in part, ICE has determined that the Petitioner is a priority for removal because he is a public safety concern, and intends to remove him as soon as possible.  As soon as the itinerary is approved, a ticket and itinerary in Applicant's name will be issued.

21. Once the itinerary is issued, there is only one additional requirement that must be met: the Petitioner must receive a negative Covid-19 test within 48 hours of his flight.  ICE already has arrangements in place for the Petitioner to receive this test within the designated time period.

22. Accordingly, due to these recent developments, including the expansion of vaccine availability worldwide, the opening of weekly flights to Shanghai beginning on August 15, 2021, the Department's request to remove the Petitioner on a designated flight scheduled to depart on August 16, 2021, and ICE's continued view that the Petitioner presents a safety risk to the public, and is thus a priority for removal, there is a significant likelihood that the Petitioner will be removed in the reasonably foreseeable future.

Executed this 11th day of June 2021.

*Denise Alexander*
Deportation Officer
U.S. Immigration and Customs Enforcement